[No. B218150. Second Dist., Div. Three. Dec. 11, 2009.]

In re JAMES MASONER on Habeas Corpus.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Assistant Attorney General, Heather Bushman and Kim Aarons, Deputy Attorneys General, for Appellant Ben Curry, Warden of Correctional Training Facility.

Daniel Broderick, Federal Public Defender, and Monica Knox, Assistant Federal Public Defender, for Respondent James Masoner.

## OPINION

**KITCHING, J.—**

### INTRODUCTION

In December 2007, the Board of Parole Hearings (Board) granted respondent James Masoner parole. Governor Arnold Schwarzenegger, however, reversed the Board's decision. Masoner then filed a petition for a writ of habeas

corpus, which was granted by the superior court. Appellant Ben Curry, the warden of the prison where Masoner is incarcerated, appeals the order granting Masoner's petition.

Under California law, Masoner is entitled to be released on parole if he does not currently pose a danger to public safety. (*In re Lawrence* (2008) 44 Cal.4th 1181, 1191 [82 Cal.Rptr.3d 169, 190 P.3d 535] (*Lawrence*).) Appellant does not challenge the superior court's finding that there was no evidence that Masoner currently poses such a danger. Rather, appellant contends that the remedy provided by the superior court of reinstating the Board's decision violated the Governor's constitutional and statutory right to review the Board's decisions. Appellant contends that the proper remedy was to remand the matter to the Governor for further consideration. We disagree.

Where, as here, the superior court finds that there is no evidence supporting the Governor's reversal of the Board's decision granting an inmate parole, the superior court has the authority to reinstate the Board's decision without remanding the matter to the Governor. We therefore affirm the superior court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1987, Masoner drove a vehicle while under the influence of alcohol into a house, killing a four-year-old child and injuring others. Masoner was convicted of second degree murder, vehicular manslaughter while driving under the influence and driving under the influence. He was sentenced in 1988 to a term of 15 years to life with the possibility of parole. Masoner was 47 years old at that time.

Masoner, a college graduate, had a long career in the insurance field prior to his conviction in 1988. He had no juvenile record and one adult conviction for driving under the influence in 1982.

Masoner has been a model prisoner. He has not been subject to any disciplinary action. He has completed vocational training, worked at various positions, participated in self-help programs and therapy, including Alcoholics Anonymous, and tutored other inmates.

Prior to the December 2007 decision by the Board which is the subject of this appeal, Masoner received positive reports from the prison's mental health professionals. These reports indicated that Masoner did not consume alcohol while in prison, that he had a good plan to stay sober if released on parole,

and that Masoner accepted responsibility for the death of the victim of his crimes. The reports also indicated that Masoner had no mental health problems and that his potential for violence in the community was no more than that of the average citizen.

On December 6, 2007, the Board held a parole suitability hearing and found Masoner suitable for parole.[1] However, on May 2, 2008, the Governor reversed the Board's December 2007 parole decision. The Governor cited the nature of the commitment offense and Masoner's alleged lack of insight into his crime as grounds for his reversal.

On January 7, 2009, Masoner filed a petition for a writ of habeas corpus in the superior court challenging the Governor's reversal of the Board's December 2007 decision. The superior court granted the petition on July 31, 2009. The superior court concluded: "The Governor's decision to reverse the Board's finding that the Petitioner is suitable for parole is not supported by some evidence in the record of the Petitioner's current risk of danger to society. . . . As nothing in the record suggests that Petitioner is unsuitable for parole, the Governor's reconsideration would be futile. Thus, the Governor is ordered to vacate his May 2, 2008 decision. The Board's December 6, 2007 decision is hereby reinstated. The Petitioner is ordered released in accordance with the parole date that the Board calculated."

---

[1] This appeal arises from the Board's December 6, 2007, parole decision. A related case, *In re Masoner* (2009) 172 Cal.App.4th 1098 [91 Cal.Rptr.3d 689] (*Masoner I*), arose out of an August 25, 2005, Board decision denying Masoner parole. In *Masoner I*, the superior court reversed the Board's 2005 decision and ordered that Masoner be released. We held that the superior court's order infringed on the rights of the executive branch in two ways. First, it infringed on the Board's discretion to make parole decisions on the basis of all relevant information, including any new information that may have emerged while the Board's decision was under review. (*Id.* at p. 1109.) Second, the order infringed on the Governor's right to review a Board parole decision with respect to a prisoner convicted of murder serving a sentence with an indeterminate term. (*Ibid.*)

We concluded our opinion with the following disposition: "The matter is remanded to the superior court with directions to issue an order granting Masoner's petition for writ of habeas corpus and directing the Board to vacate its decision of August 25, 2005, and to conduct a new parole suitability hearing within 120 days of the issuance of the remittitur or final resolution in the California Supreme Court. At that hearing, the Board is directed to find Masoner suitable for parole unless new evidence of his conduct or a change in his mental state subsequent to his 2007 parole hearing supports a determination that he currently poses an unreasonable risk of danger to society if released on parole." (*Masoner I, supra,* 172 Cal.App.4th at pp. 1110–1111 [91 Cal.Rptr.3d 689].)

On October 26, 2009, pursuant to the disposition of *Masoner I*, the Board held another parole suitability hearing for Masoner. On that date, a panel of the Board found Masoner suitable for parole.

Appellant filed a timely appeal of the superior court's July 31, 2009, order and promptly filed in this court a petition for a writ of supersedeas. We granted the petition and stayed the superior court's July 31, 2009, order pending further order of this court.

## CONTENTIONS

Appellant does not dispute the superior court's finding that there was no evidence to support the Governor's decision that Masoner was unsuitable for parole. Rather, appellant contends that the remedy ordered by the superior court—reinstatement of the Board's decision releasing Masoner from prison—divests the Governor of his statutory and constitutional discretion to determine parole suitability, grants relief beyond the process due, and violates the separation of powers doctrine. Appellant argues that the proper remedy was limited to remanding the matter to the Governor to proceed in accordance with due process.

## DISCUSSION

1. *The Superior Court's Order Reinstating the Board's Decision Does Not Divest the Governor of His Right to Review the Board's Parole Decisions*

 The Board has the power and authority to grant inmates parole. (Pen. Code, § 3040.) " 'Pursuant to statute, the Board "shall normally set a parole release date" one year prior to the inmate's minimum eligible parole release date, and shall set the date "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Pen. Code, § 3041, subd. (a).)' [Citation.]" (*In re Aguilar* (2008) 168 Cal.App.4th 1479, 1486 [86 Cal.Rptr.3d 498] (*Aguilar*).)

 The Board is required to review certain factors specified by regulation in determining an inmate's parole suitability. (*Aguilar, supra*, 168 Cal.App.4th at pp. 1486–1487.) "The fundamental consideration is public safety." (*Id.* at p. 1487.) If the inmate is eligible for parole and, in light of all relevant factors, is suitable for parole because he or she does not currently pose a danger to public safety, the inmate must be released on parole. (See *Lawrence, supra*, 44 Cal.4th at pp. 1191, 1205–1206.)

Under article V, section 8, subdivision (b) of the California Constitution and Penal Code section 3041.2, the Governor has the right to review the Board's parole suitability decisions relating to an inmate sentenced to an

indeterminate prison term based upon a murder conviction.[2] Although the Governor is required to review the same factors as the Board is required to consider, the Governor undertakes an independent, de novo review of the inmate's suitability for parole. (Cal. Const., art. V, § 8, subd. (b); *In re Rosenkrantz* (2002) 29 Cal.4th 616, 660–661 [128 Cal.Rptr.2d 104, 59 P.3d 174] (*Rosenkrantz*).)

■ Appellant argues that the superior court's order reinstating the Board's 2007 parole decision divests the Governor of his right to review the Board's parole decisions. We disagree. In contrast to *Masoner I*, where the Governor had *not* reviewed the Board's 2005 parole decision, in this case the Governor has reviewed the Board's 2007 parole decision. (See fn. 1, *ante*.) The Governor therefore was given a full opportunity to exercise his constitutional and statutory right of review.

Appellant contends that the Governor should be permitted to conduct a review in accordance with the standard enunciated in *Lawrence*, which was decided after the Governor's reversal of the Board's 2007 parole decision.[3] We reject this argument. In *Lawrence*, the Governor reversed the Board's decision to grant the inmate parole. (*Lawrence, supra*, 44 Cal.4th at p. 1190.) The Court of Appeal then granted the inmate's petition for a writ of habeas corpus and reinstated the Board's decision. (*Ibid.*) The Supreme Court affirmed the Court of Appeal's judgment. (*Id.* at p. 1229.) The disposition of *Lawrence* thus was *not* to remand the case to the Governor for reconsideration, as appellant seeks here; it was to reinstate the Board's decision.

---

[2] The Governor also may request the review of any other parole decision by the Board. (Pen. Code, § 3041.1.)

[3] In *Rosenkrantz*, the Supreme Court held that the Governor's decision granting or denying parole was subject to limited judicial review to determine whether the decision is supported by "some evidence." (*Rosenkrantz, supra*, 29 Cal.4th at p. 625.) This holding was affirmed in *In re Dannenberg* (2005) 34 Cal.4th 1061, 1084 [23 Cal.Rptr.3d 417, 104 P.3d 783] (*Dannenberg*). *Rosenkrantz* and *Dannenberg* were clarified in *Lawrence*. There, the Supreme Court held that the standard of review of the Governor's decision to deny an inmate parole was "whether 'some evidence' supports the conclusion that the inmate is unsuitable for parole because he or she currently is dangerous." (*Lawrence, supra*, 44 Cal.4th at p. 1191.) The court rejected the Attorney General's argument that the Governor's decision to deny an inmate parole should be upheld if there was merely some evidence supporting the Governor's characterization of the commitment offense as particularly egregious. (*Ibid.*) The court further stated: "[W]ith regard to the aggravated circumstances of a commitment offense, we conclude that to the extent our decisions in *Rosenkrantz* and *Dannenberg* have been read to imply that a particularly egregious commitment offense *always* will provide the requisite modicum of evidence supporting the Board's or the Governor's decision, this assumption is inconsistent with the statutory mandate that the Board and the Governor consider all relevant statutory factors when evaluating an inmate's suitability for parole, and inconsistent with the inmate's due process liberty interest in parole that we recognized in *Rosenkrantz*." (*Ibid.*)

Likewise, this court and other Courts of Appeal have vacated the Governor's reversal of the Board's decision and reinstated the Board's decision without remanding the matter to the Governor. (*Aguilar, supra,* 168 Cal.App.4th at p. 1491; *In re Vasquez* (2009) 170 Cal.App.4th 370, 387 [87 Cal.Rptr.3d 853]; *In re Dannenberg* (2009) 173 Cal.App.4th 237, 257 [92 Cal.Rptr.3d 647].) The superior court's disposition here is consistent with these cases and does not divest the Governor of his right to review the Board's parole decisions.

### 2. *The Superior Court's Order Did Not Grant Relief Beyond the Process Due*

Appellant argues that when a due process violation is found to exist, the remedy is to provide the process due. According to appellant, the proper remedy here is not to reinstate the *Board's* decision; it is to provide Masoner the process due by the *Governor.* Specifically, appellant contends that under *Rosenkrantz,* the matter must be remanded to the Governor so that the Governor can reconsider Masoner's parole suitability in accordance with due process.

Appellant's reliance on *Rosenkrantz* is misplaced. In *Rosenkrantz,* the Supreme Court held that if the *Board's* decision denying parole was not supported by some evidence, "the court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacate its decision denying parole and thereafter to proceed in accordance with due process of law." (*Rosenkrantz, supra,* 29 Cal.4th at p. 658.)

 The present case is distinguishable from *Rosenkrantz.* In this case, the superior court vacated the Governor's, not the Board's, decision. This is a critical difference. "Although the *Board* can give the prisoner a new hearing and consider additional evidence, the *Governor's* constitutional authority is limited to a review of the materials provided by the Board." (*In re Smith* (2003) 109 Cal.App.4th 489, 507 [134 Cal.Rptr.2d 781]; accord, *Masoner I, supra,* 172 Cal.App.4th at p. 1106.) Remanding the matter to the Governor would be an idle act because the Governor has already reviewed the materials provided by the Board and, according to the superior court's unchallenged order, erroneously concluded that there was some evidence in those materials to support a reversal of the Board's decision. (See *In re Smith,* at p. 507; *Aguilar, supra,* 168 Cal.App.4th at p. 1491.)

### 3. *The Superior Court's Order Did Not Violate the Separation of Powers Doctrine*

Appellant argues that the remedy ordered by the superior court violates the separation of powers doctrine. However, appellant does not provide any

analysis or cite any authority to support his position. We thus consider the claim of error forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."]; *People v. Stanley* (1995) 10 Cal.4th 764 [42 Cal.Rptr.2d 543, 897 P.2d 481] [issue deemed waived where appellants failed to support claim with argument, analysis or citation to the record].) Moreover, for reasons we shall explain, even assuming the claim of error was not forfeited, we would reject appellant's argument.

Article III, section 3 of the California Constitution states: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

■ " 'The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch. [Citations.]' [Citation.] 'Although article III, section 3 of the California Constitution "defines a system of government in which the powers of the three branches are to be kept largely separate, it also comprehends the existence of common boundaries between the legislative, judicial, and executive zones of power thus created. [Citation.] Its mandate is 'to protect any one branch against the overreaching of any other branch.' " ' " (*Rosenkrantz, supra*, 29 Cal.4th at p. 662.)

■ In *Rosenkrantz*, the Supreme Court held that judicial review of the Governor's parole decisions under the "some evidence" standard does not violate the separation of powers doctrine. (*Rosenkrantz, supra*, 29 Cal.4th at p. 667.) A necessary component of judicial review is the power of the courts to provide the aggrieved party with a meaningful remedy. The remedy provided here does not infringe on the core functions of the Governor or on the Governor's specific authority to review the Board's parole suitability decisions. As stated, the Governor has already reviewed the Board's 2007 decision.

4. *Allowing the Governor an Unlimited Number of Reviews of the Board's Parole Decision Would Violate a Prisoner's Due Process Rights and Render the Writ of Habeas Corpus Meaningless*

"The writ of habeas corpus enjoys an extremely important place in the history of this state and this nation. Often termed the 'Great Writ,' it 'has been justifiably lauded as " 'the safe-guard and the palladium of our liberties.' " ' " (*People v. Villa* (2009) 45 Cal.4th 1063, 1068 [90 Cal.Rptr.3d 344, 202 P.3d 427].) The writ is "a critical check on the Executive, ensuring that it

does not detain individuals except in accordance with law." (*Hamdi v. Rumsfeld* (2004) 542 U.S. 507, 525 [159 L.Ed.2d 578, 124 S.Ct. 2633].)

■ The writ of habeas corpus is the means by which a prisoner seeks to challenge the Governor's reversal of a Board decision granting the prisoner parole. Prisoners possess a liberty interest in the Governor's parole review decisions, which is protected by due process of law. (*Rosenkrantz, supra,* 29 Cal.4th at p. 661.) A prisoner's due process rights cannot exist in any practical sense unless a prisoner can obtain a writ of habeas corpus protecting such rights. (See *id.* at p. 655.)

In *Rosenkrantz,* the Governor argued that judicial review of a parole review decision should be limited to determine whether the decision, on its face, complies with due process without determining whether there was any evidence to support the decision. The Supreme Court, however, rejected that argument. It held: "If we were to adopt the Governor's position, a parole review decision with no basis in fact and not supported by *any* evidence in the record would be upheld as long as the decision, on its face, recited supposed facts corresponding to the specified factors and appeared reasonable. Such a decision, however, would be arbitrary and capricious and, because it affected a protected liberty interest, would violate established principles of due process of law." (*Rosenkrantz, supra,* 29 Cal.4th at p. 665.)

In the present case, appellant contends that the matter must be remanded to the Governor even though the superior court found that there was no evidence to support the Governor's reversal of the Board's parole decision, a finding the Governor does not challenge. If we were to adopt appellant's position, however, a prisoner's due process rights and the writ of habeas corpus would be meaningless under the circumstances of this case because the Governor could arbitrarily detain a prisoner indefinitely, without evidence of the prisoner's current dangerousness and in violation of California law, and the courts would have no practical power to grant the prisoner relief. The rule proposed by appellant would entitle the Governor to repeatedly "reconsider" the release of the prisoner no matter how many times the courts found that there was no evidence that the prisoner was currently dangerous. Such a rule would violate principles of due process and eviscerate judicial scrutiny of the Governor's parole review decisions. We thus reject appellant's arguments and hold that the superior court acted well within its authority in declining to remand the matter to the Governor.

## DISPOSITION

The order of the superior court dated July 31, 2009, which granted Masoner's petition for a writ of habeas corpus, reinstated the Board's December 2007 decision, vacated the Governor's reversal of that decision, and released Masoner from prison in accordance with the parole date that the Board calculated, is affirmed. The stay of the superior court's July 31, 2009, order is lifted. In the interests of justice, this opinion is made final as to this court immediately upon its filing. (*In re Dannenberg, supra,* 173 Cal.App.4th at p. 257.)

Klein, P. J., and Croskey, J., concurred.